1  MORGAN, LEWIS & BOCKIUS LLP
   Nicole A. Diller (SBN 154842)
2  nicole.diller@morganlewis.com
   Roberta H. Vespremi (SBN 225067)
3  roberta.vespremi@morganlewis.com
   One Market, Spear Street Tower
4  San Francisco, CA  94105-1126
   Tel:  415.442.1000
5  Fax:  415.442.1001

6  Attorneys for Defendant HP INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| MARK BURGESS, RHONDA JOHNSON, LARRY LOPEZ, HOLGER MEYER, and ALAN B. MUNNS, individually, and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>      v.<br><br>HP INC., FIDELITY MANAGEMENT TRUST COMPANY, and UNITED AIRLINES, INC.<br><br>           Defendants. | Case No.  5:16-CV-04784-LHK<br><br>**DEFENDANT HP INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      December 22, 2016<br>Time:     1:30<br>Crtm:     8 – 4th Floor<br>Judge:    Hon. Lucy Koh<br><br>Complaint Filed:          August 18, 2016<br>Complaint Amended:   September 22, 2016 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................... 1

II. STATEMENT OF ISSUES TO BE DECIDED ...................................................... 3

III. RELEVANT BACKGROUND AND ALLEGATIONS ........................................ 3

    A. The Plan and Fidelity's Services to the Plan ............................................... 3

    B. Float Process ................................................................................................ 4

    C. Plaintiffs' FAC ............................................................................................. 5

IV. LEGAL STANDARD .............................................................................................. 6

V. BECAUSE FIDELITY'S ACTIONS WITH RESPECT TO FLOAT INCOME DID NOT VIOLATE ERISA, HP'S ALLEGED FAILURE TO MONITOR OR OTHERWISE PREVENT FIDELITY'S ACTIONS CANNOT CONSTITUTE A VIOLATION OF ERISA ......................................................................................... 7

VI. CONCLUSION ........................................................................................................ 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Andersen v. DHL Ret. Pension Plan*,
  2012 WL 5389141 (W.D. Wash. 2012) ................................................................................ 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 6

*Barrionuevo v. Chase Bank, N.A.*,
  885 F. Supp. 2d 964 (N.D. Cal. 2012) ................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 6

*Edgar v. Avaya, Inc.*,
  503 F.3d 340 (3d Cir. 2007) ................................................................................................ 8

*In re Chesapeake Energy Corp. CIV-12-688-M, 2012 ERISA Class Litig.*,
  2013 WL 5596908 (W.D. Okla. Oct. 11, 2013) .................................................................. 6

*In re HP ERISA Litig.*,
  2014 WL 1339645 (N.D. Cal. Apr. 2, 2014) ....................................................................... 9

*Kelley v. Fidelity Management Trust Company*,
  829 F.3d 55 (1st Cir. 2016) .......................................................................................... 2, 3, 5

*Rinehart v. Akers*,
  722 F.3d 137 (2d Cir. 2013) ............................................................................................ 6, 8

*Romero v. Nokia, Inc.*,
  2013 WL 5692324 (N.D. Cal. Oct. 15, 2013) .................................................................. 8, 9

*Spear v. Fenkell*,
  2015 WL 3643571 (E.D. Pa. June 12, 2015) ...................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................................. 6

*Tussey v. ABB, Inc.*,
  746 F.3d 327 (8th Cir. 2014) ..................................................................................... *passim*

*White v. Chevron Corp.*,
  2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ................................................................. 6, 8

**STATUTES, RULES & REGULATIONS**

ERISA §, 29 U.S.C. §

    3(2)(A), 1002(2)(A) ..................................................................................................................3

    405, 1105 ..............................................................................................................................7, 9

    406, 1106 .................................................................................................................................9

26 U.S.C. § 401(k) .........................................................................................................................3

29 C.F.R. § 2510.3-101 ..................................................................................................................2

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................1, 6

# NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on December 22, 2016 at 1:30 p.m., or as soon thereafter as it can be heard before the Honorable Lucy H. Koh in Courtroom 8 of the United States District Court, Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, California 95113, Defendant HP Inc. ("HP") will, and hereby does, move under Fed.R.Civ.P. Rule 12(b)(6) to dismiss with prejudice the Fourth and Fifth Claims of the First Amended Complaint ("FAC") filed by Plaintiffs Mark Burgess, Rhonda Johnson, Larry Lopez, Holger Meyer, and Alan B. Munns.  Specifically, for the reasons stated in Defendant Fidelity Management Trust Company's ("Fidelity") Memorandum in Support of Its Motion to Dismiss ("Fidelity Brief"), the FAC's First through Third Claims for Relief fail against Fidelity because float income is not a "plan asset" within the meaning of Employee Retirement Income Security Act of 1974, as amended ("ERISA").  The FAC's Fourth and Fifth Claims for Relief, which are asserted against HP, are derivative of the claims brought against Fidelity.  As a result, since the claims against Fidelity fail, the claims against HP necessarily lack merit and should be dismissed.

HP bases its motion on this notice of motion and motion, the memorandum of points and authorities below, all pleadings and papers on file in this case, and upon such other matters presented to the Court before or at the time of the hearing.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION[1]

Plaintiffs assert five claims in their FAC.  The first three are against Fidelity.  The last two are against HP and United Airlines.  All of the claims relate to services that Fidelity provided to the Hewlett-Packard Company 401(k) Plan (the "Plan") and United Airlines Ground Employee 401(k) Plan.  FAC ¶ 1.  As relevant to HP, Claim 4 alleges that HP breached its fiduciary duty or co-fiduciary duty under ERISA with respect to the retention and monitoring of Fidelity as a

---

[1] For the purposes of this motion only, HP assumes the truth of the facts properly alleged in the Complaint, as required by Federal Rule of Civil Procedure 12(b)(6).  HP reserves the right to dispute and deny any of the FAC's allegations in the future.

- 1 -   DEF. HP INC.'S MOTION TO DISMISS
5:16-CV-04784-LHK

1 service provider. *Id.* ¶ 118.  Claim 5 alleges that HP failed to stop Fidelity's alleged "self-
2 dealing" and thereby permitted the Plan to engage in prohibited transactions. *Id.* ¶ 124.

3    Until January 2013, Fidelity served as the trustee of the Plan.  FAC ¶¶ 5, 33.  Fidelity's
4 duties and responsibilities were set out in, among others, a trust agreement between Fidelity and
5 the Plan. *Id.* ¶ 34.  Fidelity assisted the Plan with activities that included the processing of Plan
6 participant contributions into participants' selected investment options and the processing of
7 participant withdrawal requests. *Id.* ¶ 12.  Those particular transactions typically take more than
8 one day to complete and, while in transit, the money is known as "float." *See, e.g.*, *id.* ¶¶ 55, 63.
9 As common in the investment community, Fidelity makes a temporary transfer of the float into a
10 separate investment vehicle overnight where the float earns revenue, sometimes called "float
11 income." *Id.* ¶ 1.  Plaintiffs allege that Fidelity uses that float income for its own benefit in
12 violation of the ERISA.  FAC ¶¶ 1, 2.

13    Each of Plaintiffs' claims hinges on a single conclusion of law—that float income is a
14 "plan asset" as that term is defined in Department of Labor regulations at 29 C.F.R. § 2510.3-101.
15 If the float income does not belong to the Plan—in other words, if it is not a Plan asset—the
16 management of the float does not trigger any fiduciary duties or responsibilities under ERISA.  In
17 the last two years, two Courts of Appeal, the First Circuit and the Eight Circuit, have held that
18 Fidelity's same alleged utilization of float in connection with the services it provides to employee
19 benefit plans does not violate any provision of ERISA. *Kelley v. Fidelity Management Trust Co.*,
20 829 F.3d 55 (1st Cir. 2016); *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014).  Both Courts of
21 Appeal concluded without qualification that float income is *not* a plan asset under ERISA.

22    Despite the weight of authority, Plaintiffs attempt a third bite at the apple by alleging in
23 the FAC that Fidelity breached its fiduciary duties and engaged in prohibited transactions by
24 asserting in a conclusory manner that Fidelity retained float income for its own benefit.  FAC
25 ¶¶ 102-15.  The FAC then alleges that HP violated ERISA by allowing Fidelity to do so. *Id.*
26 ¶¶ 118, 119, 124.  Because float income is not, as a matter of law, a Plan asset under ERISA,
27 Fidelity's conduct cannot and does not violate ERISA.  Without the underlying ERISA violations,
28 Plaintiffs' derivative claims against HP fail as a matter of law.  Fidelity asks the Court in its Brief

- 2 -  DEF. HP INC.'S MOTION TO DISMISS
5:16-CV-04784-LHK

to dismiss the claims asserted against it with prejudice.  HP respectfully asks the Court to dismiss the derivative claims against HP with prejudice as well.

## II. STATEMENT OF ISSUES TO BE DECIDED

Whether the Fourth and Fifth Claims against HP, both derivative, fail as a matter of law because Fidelity's underlying conduct regarding the management of float did not violate ERISA.

## III. RELEVANT BACKGROUND AND ALLEGATIONS

The allegations concerning the relationship between the Plan and Fidelity, including the treatment of float income, are essentially the same as those alleged in *Kelley v. Fidelity Management Trust Co.*, 829 F.3d 55 (1st Cir. 2016) and *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014).  The services that Fidelity provided to the Plan specifically were at issue in *Kelley* and *Tussey* made mirror allegations.  *See Kelley v. Fidelity Management Trust Co.*, 829 F.3d 55 (1st Cir. 2016) and *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014).

### A. The Plan and Fidelity's Services to the Plan

Plaintiffs allege that Fidelity served as a trustee and fiduciary for the Plan, an employee pension benefit plan as defined in ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  FAC ¶¶ 1, 4.  As the FAC alleges, HP sponsors the Plan.  *Id.* ¶¶ 4, 22.  Employees enrolled in the Plan make contributions to the Plan directly from their salaries or wages.  26 U.S.C. § 401(k).  In addition, HP may make additional contributions on behalf of participants.  FAC ¶ 4.  Participants have individual accounts within the Plan to which their contributions are allocated.  *Id.*; 26 U.S.C. § 401(k).  The Plan is "participant directed," meaning that participants decide how to allocate their contributions and existing account balances among investment options offered by the Plan, which include mutual funds along with other investment vehicles.  FAC ¶¶ 8, 36.

Operation of the Plan requires various administrative services, including the processing of participant contributions into the Plan's investment options and facilitating participant withdrawals from such options.  FAC ¶¶ 15, 35.  HP, on behalf of the Plan, contracts with service providers to perform administrative services relating to the Plan.  In the case of Fidelity, HP contracted for Fidelity to serve as the Plan's trustee until January 2, 2013.  *Id.* ¶¶ 33, 34.  One contract under which Fidelity operated is referred to as a "trust agreement" (the "Trust

- 3 -

DEF. HP INC.'S MOTION TO DISMISS
5:16-CV-04784-LHK

Agreement"). *Id.* ¶ 34. The Trust Agreement provided that "[t]he Trust shall consist of an initial contribution of money or other property, all investments made therewith and all proceeds thereof, and all earnings and profits thereof, less payments that are made by the Trustee as provided herein." *Id.*

Fidelity's duties as trustee under the Trust Agreement included, among other things:

> the allocation and administration of the cash contributions and payments to the plans, effectuation of trades directed by plan participants, the withdrawal of cash from the Plan['s] trusts to settle purchases of securities, the receipt of the proceeds of redemptions of mutual fund shares and the sales of other securities on behalf of the Plans as the Plans' trustee, and the deposit of those proceeds into trust for the exclusive benefit of the Plans' participants.

FAC ¶ 35.

### B.   Float Process

Each day, transactions occur that require transfers of cash, such as the purchase of securities with participant contributions, withdrawals from participant accounts, and payments to plan service providers. FAC ¶¶ 12, 35. Critical to this case is Fidelity's processing of participant contributions and withdrawals. *Id.* ¶ 2. The Eight Circuit explained Fidelity's contribution processing practices at issue in *Tussey*, 746 F.3d at 332. When a participant makes a contribution, he or she designates an investment option into which the participant instructs Fidelity to invest. *Id.*; FAC ¶ 35. For the logistical reasons discussed in Fidelity's Brief, contributions cannot be allocated to the Plan investment option selected until the next day, so Fidelity transfers them to a depository account while awaiting allocation. *Id.; see also* Fidelity Brief at II.A. Money sitting in the depository account overnight before it is distributed to the Plan investment options is often described as "float." *See* FAC ¶¶ 55, 63. Rather than keep the funds idle, Fidelity temporarily transfers them from the depository account to secured investment vehicles to earn revenue often called "float income." *Id.* ¶¶ 1, 2. The following day Fidelity transfers the principal back to the depository account and allocates it to the selected investment option. *Tussey*, 746 F.3d at 332.

The process at the other end, when participants made withdrawals from their account, is similar. FAC ¶¶ 9-12. The First Circuit explained the withdrawal process in *Kelley*, 829 F.3d at

58. When a participant requests a withdrawal from a mutual fund investment, his or her shares are redeemed by the mutual fund's payment in an amount equal to the market value of the shares. *Id.* The market value of those shares, however, is not established until the end of the particular trading day. *Id.* Because of that, the redemption of the shares occurs the day after the request to withdraw, when the mutual fund transfers cash to a "redemption bank account" owned by Fidelity. *Id.* The overnight earnings are float income. In *Tussey*, the Eighth Circuit explained a second point where float income can result where "the money withdrawn from a Plan investment option by a participant requesting payment by check while the check remains uncashed. [The participant-requested] [d]isbursements are transferred to a redemption account held for the benefit of the investment options and treated in a similar manner to depository float…." 746 F.3d at 332 n.4. In such a circumstance, a participant requests a withdrawal and Fidelity sells the investment option and drafts a check to the participant supported by the funds in the Fidelity account. FAC ¶¶ 9-11. The revenue earned on the bank account funds underlying these checks for the period that they remained uncashed is also float income. *Id.* ¶ 16.

### C. Plaintiffs' FAC

Plaintiffs filed this action on August 18, 2016 (Dkt. No. 1) and the FAC on September 22, 2016 (Dkt. No. 16). Plaintiffs allege that Fidelity was a fiduciary for the Plan. FAC ¶ 102. Plaintiffs further contend that Fidelity breached its fiduciary duties to the Plan by diverting float "as an interest free loan for its own benefit," and by failing to disclose its "diversion of cash from the Plans and from Plan transactions." *Id.* ¶ 104. Plaintiffs assert that Fidelity's "diversion of cash … for its own use and benefit" constitutes a prohibited transaction under ERISA. *Id.* ¶ 108.

Plaintiffs allege HP was a fiduciary for the Plan. FAC ¶ 117. They claim that HP breached its fiduciary duty or co-fiduciary duty by "failing [to] undertake a pruden[t] fiduciary process with respect to the retention or monitoring of Fidelity" and with respect to Fidelity's "diversion of cash from the Plans and from Plan transactions for [Fidelity's] own benefit." *Id.* ¶ 118. They claim that HP's "fail[ure] to stop Fidelity's self-dealing" amounted to a prohibited transaction under ERISA. *Id.* ¶¶ 123, 124.

## IV. LEGAL STANDARD

Plaintiffs' claims against HP fail because their allegations are not plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). However, courts need not accept as true "assertions of law or unwarranted factual inferences" contained within the complaint when deciding a motion to dismiss. *Id.* A plaintiff must allege "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Adequate pleading requires "more than [the] sheer possibility that a defendant acted unlawfully." *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 968 (N.D. Cal. 2012).

A claim for breach of the duty to monitor fails as a matter of law if the underlying fiduciary did not commit an ERISA violation. *Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013) ("Plaintiffs cannot maintain a claim for breach of the duty to monitor by the Director Defendants absent an underlying breach of the duties imposed under ERISA by the Benefit Committee Defendants.");[2] *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *19 (N.D. Cal. Aug. 29, 2016) (dismissing derivative claim of breach of duty to monitor where plaintiffs failed to state a claim for breach of fiduciary duty); *In re Chesapeake Energy Corp. CIV-12-688-M, 2012 ERISA Class Litig.*, No. CIV-12-688-M, 2013 WL 5596908, at *12 (W.D. Okla. Oct. 11, 2013) (dismissing derivative monitoring claim).

## V. BECAUSE FIDELITY'S ACTIONS WITH RESPECT TO FLOAT INCOME DID NOT VIOLATE ERISA, HP'S ALLEGED FAILURE TO MONITOR OR OTHERWISE PREVENT FIDELITY'S ACTIONS CANNOT CONSTITUTE A VIOLATION OF ERISA

Rather than separately briefing why float income does not constitute a plan asset under ERISA and why the First and Eight Circuit decisions in *Kelly* and *Tussey* should be followed in this case, HP expressly adopts the legal arguments set forth in the Fidelity Brief. Fidelity Brief, Section IV. Because float income is not a plan asset, Fidelity's alleged retention or use of float

---

[2] *Vacated on other grounds*, 134 S. Ct. 2900 (2014), *reaff'd Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016).

income cannot constitute a breach of fiduciary duty or a prohibited transaction under ERISA. Plaintiffs' Fourth and Fifth Claims against HP necessarily fail because they are dependent on a finding that Fidelity violated ERISA through its treatment of float income.

The FAC alleges that HP is subject to co-fiduciary liability under ERISA Section 405(a), which provides, in pertinent part:

> [A] fiduciary with respect to a plan shall be liable ***for a breach of fiduciary responsibility of another fiduciary*** with respect to the same plan in the following circumstances:
>
> (1)   if he participates knowingly in, or knowingly undertakes to conceal, ***an act or omission of such other fiduciary, knowing such act or omission is a breach***;
>
> (2)   if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to this status as a fiduciary, he has ***enabled such other fiduciary to commit a breach***; or
>
> (3)   if he has knowledge of ***a breach by such other fiduciary***, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a) (emphasis added). The statute thus expressly contemplates co-fiduciary liability only in circumstances in which an underlying breach has occurred. Thus, to hold HP liable for a violation of ERISA Section 405, the Court would have to make a predicate finding that Fidelity breached its fiduciary duty.

The same is true for the claim that HP breached its fiduciary duty or engaged in prohibited transactions by failing to stop Fidelity's alleged ERISA violations and thereby allowing the Plan to engage in prohibited transactions. If Fidelity acted in a manner consistent with ERISA, as the Fidelity Brief demonstrates it did, then HP by definition can have no derivative liability under ERISA. *See, e.g.*, *Rinehart*, 722 F.3d at 154 ("Plaintiffs cannot maintain a claim for breach of the duty to monitor by the Director Defendants absent an underlying breach of the duties imposed under ERISA by the Benefit Committee Defendants"); *Edgar v. Avaya, Inc.*, 503 F.3d 340, 350 n.15 (3d Cir. 2007) (affirming dismissal of duty to monitor claim on the grounds that the court had affirmed dismissal of the underlying claim for breach of the duty of prudence); *White*, 2016

1   WL 4502808, at *19 (dismissing derivative claim of breach of duty to monitor where plaintiffs
2   failed to state a claim for breach of fiduciary duty); *see also Andersen v. DHL Ret. Pension Plan*,
3   No. C 12-439 MJP, 2012 WL 5389141, at *5 (W.D. Wash. 2012) (dismissing derivative counts
4   after dismissing principal ERISA claim), *aff'd* 766 F.3d 1205 (9th Cir. 2014).

5   For example, in *Romero v. Nokia, Inc.*, plaintiffs, who were participants in Nokia's 401(k)
6   plan, alleged that Nokia and its Board of Directors failed to monitor members of the Nokia
7   Retirement Savings and Investment Plan Committee ("Nokia Committee"), who plaintiffs alleged
8   acted imprudently by allowing Nokia's plan to invest in Nokia stock.  No. C 12-6260 PJH, 2013
9   WL 5692324, at *2 (N.D. Cal. Oct. 15, 2013).  Defendants brought a motion to dismiss all claims,
10  which the court granted in full. *Id.*, at *4-5.  The court first found that plaintiffs had failed to state
11  claims for the breach of the duties of prudence and loyalty against the Nokia Committee. *Id.*, at
12  *5.  The court then dismissed the duty to monitor and co-fiduciary liability claims against Nokia
13  and the Board.  *Id.*, at *5.  When examining the duty to monitor claim, the court noted that
14  plaintiffs did not allege "separate facts underlying th[e] claim.  Instead the factual allegations
15  supporting this cause of action are indeed dependent on the [Nokia Committee] defendants'
16  alleged failure to prudently and loyally manage the plan's assets." *Id.*  For example, plaintiffs
17  alleged that Nokia and the Board breached their monitoring duties by "standing idly by as the
18  plan suffered enormous losses as a result of their appointee's imprudent actions and inaction with
19  respect to company stock" and by "failing to remove appointees whose performance was
20  inadequate in that they continued to permit the plan to make and maintain investments in the
21  company stock." *Id.*  The court observed that "[e]ssentially, plaintiff assumes a breach by the
22  [Nokia Committee], then claims that any breach [by Nokia and the Board] must have resulted
23  from a failure to monitor." *Id.*  The court concluded that the fiduciary liability claim was
24  "necessarily dependent on at least one underlying breach of fiduciary duty" and could not survive
25  because plaintiffs had failed to plead an independent breach of fiduciary duty. *Id.*

26  Here, Plaintiffs' allegations also show that their claims against HP are fully dependent on
27  their claims that Fidelity breached its fiduciary duties.  For example, Plaintiffs assert that HP
28  failed to "undertake a prudent fiduciary process with respect to the retention or monitoring of

Fidelity" (FAC ¶ 118), and "failed to stop Fidelity's self-dealing, thereby causing the HP Plan[] to engage in transactions prohibited by ERISA § 406(a) and (b)" (FAC ¶ 124). Therefore, Plaintiffs' claims against HP are dependent upon a predicate breach by Fidelity. For the reasons discussed in the Fidelity Brief, the premise that Fidelity committed any wrongdoing fails as a matter of law. As such, the Fourth and Fifth Claims against HP must be dismissed with prejudice. *Spear v. Fenkell*, Civ. No. 13-02391, 2015 WL 3643571, at *22 (E.D. Pa. June 12, 2015) ("[I]f there is no fiduciary violation, there is no failure to monitor claim. To the extent that the underlying fiduciary violation claims have been dismissed, the derivative failure to monitor claim will be dismissed, as well") (internal citation omitted); *In re HP ERISA Litig.*, Nos. C-12-6199, 12-6410, 13-0301, 2014 WL 1339645, at *8 (N.D. Cal. Apr. 2, 2014) (dismissing derivative claims of failure to monitor and participation in co-fiduciaries' alleged breaches, along with underlying claims); ERISA § 405(a), 29 U.S.C. § 1105(a) (predicating co-fiduciary liability on underlying breach of fiduciary duty by another).

## VI.    CONCLUSION

For the reasons stated above and those in the Fidelity Brief, HP respectfully requests that this Court dismiss the Fourth and Fifth Claims with prejudice.

Dated: November 2, 2016                                    MORGAN, LEWIS & BOCKIUS LLP

By    */s/ Nicole A. Diller*
       Nicole A. Diller
       Attorneys for Defendant HP INC.

DB2/ 30763572.1

- 9 -                                    DEF. HP INC.'S MOTION TO DISMISS
                                         5:16-CV-04784-LHK